UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD E. R., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 5:17-cv-02483-KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

In July 2014, Richard E. R. ("Plaintiff") filed an application for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB") alleging a disability onset date of March 18, 2014. Administrative Record ("AR") 200-01, 207-08.

On March 15, 2017, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified,

---

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

as did a vocational expert ("VE"). AR 42-74.

On March 24, 2017, the ALJ issued a decision denying Plaintiff's applications. AR 15-34. The ALJ found that Plaintiff suffered from the medically determinable severe impairments of "degenerative disc disease of the lumbar spine, osteoarthritis of the left knee, obesity, a history of adenocarcinoma of the cecum, and mental impairments, diagnosed to include depressive disorders and anxiety disorders." AR 21. The ALJ determined that Plaintiff's mental impairments did not meet or medically equal the severity of a listed impairment, because they caused only "moderate" limitations in four key functional areas. AR 22-23.

Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following additional restrictions to account for Plaintiff's mental impairments:

> [T]he claimant is limited to tasks that can be learned within a short demonstration period of up to 30 days, and with no more than frequent changes to the daily tasks and duties. He is further limited to working primarily with things, rather than with people, such that the work contact with others is only occasional. Finally, the claimant can maintain concentration, pace, and persistence on this limited range of tasks for two hours at a time before taking normally scheduled breaks, throughout the workday.

AR 24.

Based on the RFC and the VE's testimony, the ALJ determined that Plaintiff could not perform his past relevant work as a plasterer. AR 28, 53. The ALJ found, however, that Plaintiff could work as a hardware assembler, lacer and tier, and bag loader. AR 29. The ALJ concluded that Plaintiff was not disabled. Id.

## II.
## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits.

2

The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.
## ISSUE PRESENTED

Plaintiff's appeal presents the sole issue of whether the ALJ properly evaluated the opinions of treating psychiatrist Dr. Sheela Surapaneni. (Dkt. 22, Joint Stipulation ["JS"] at 4.)

## IV.
## DISCUSSION

### A. Rules for Weighing Conflicting Medical Evidence.

Three types of physicians may offer opinions in Social Security cases:

(1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended on April 9, 1996). The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d 821, 830 (9th Cir. 1996). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

B. **Summary of Medical Evidence from Dr. Surapaneni.**

Dr. Surapaneni treated Plaintiff at Sunny Hills Behavioral Health. See AR 393-401. In chronological order, these treatment notes reflect the following:

April 28, 2015: At this initial office visit, Dr. Surapaneni recorded that Plaintiff was "taking meds for back pain and is suffering from anxiety. He … was given some meds for depression and felt good. He was nervous and couldn't focus." He was diagnosed as suffering from major depressive disorder and prescribed Seroquel and Wellbutrin. While he displayed anxiety and a depressed mood, he was alert and oriented with normal speech. The assessment was "[c]lient is currently stable with symptoms on current dose of medications." Dr. Surapaneni recommended that he return to the clinic in one month. AR 400.

September 9, 2015: Plaintiff "came in for a refill of the meds as after he stopped the meds he started having sleep issues. He had no anger issues when he took the Seroquel. He feels drowsy in the day time. He takes gabapentin and he is doing fine with pain. He was out of the wellbutrin and is nervous of looking for a

job. He wants to try antianxiety pills and wants meds for anger issues." The assessment again was "[c]lient is currently stable with symptoms on current dose of medications." He was prescribed a new medication, Effexor. AR 398.

October 14, 2015: Plaintiff "came in for a refill of the medicine. He ran out of the meds 3 days ago and had a drink and felt very anxious. He has no other symptoms and wants to get back on the medicines." Dr. Surapaneni noted that Plaintiff's speech was coherent and he answered questions appropriately, although he sometimes interrupted, talked "with anxiety," and appeared confused. From these observations, Dr. Surapaneni concluded, "[c]ognitive functions fair." The assessment again was "[c]lient is currently stable with symptoms on current dose of medications." AR 397.

November 13, 2015: Plaintiff "is not doing better even with the Effexor. He is having the [panic] attacks and his probation officer is mean to him and that causes a lot of anxiety." The assessment again was "[c]lient is currently stable with symptoms on current dose of medications." This time, the medications listed are Effexor, Seroquel, and Alprazolam. AR 396.

December 10, 2015: Plaintiff "came in for a refill and says the medicine is working. … He sleeps fine and has no issues with his appetite." Dr. Surapaneni recommended that he return to the clinic in one month. AR 395.

January 21, 2016: Dr. Surapaneni noted that Plaintiff was in therapy for his back and was helping to raise his 3-year-old granddaughter. "He is taking meds regularly and feels like the meds are at the right doses. He is sleeping good and eating well." The assessment again was "client is currently stable with symptoms on current dose of medications." Dr. Surapaneni recommended returning to the clinic in 2 months. AR 394.

April 13, 2016: This brief note does not record any of Plaintiff's complaints, any observations, or any changes to medication. Dr. Surapaneni again recommends returning to the clinic in 2 months. AR 393.

Thus, these treatment notes reflect (1) Plaintiff's request for medication to address depression and anxiety, (2) adjustments of those medications over the approximately one-year span of these treating records, (3) some worsening of symptoms when Plaintiff ran out of medications, but improvement of symptoms when Plaintiff took medications, (4) Dr. Surapaneni's consistent assessment that Plaintiff's symptoms were stable with medication, and (5) a shift from recommending clinic visits every 1 month to every 2 months. They consistently note that Plaintiff is dressed and groomed appropriately. AR 394, 396-98, 400.

Dr. Surapaneni also completed a mental impairment residual functional capacity questionnaire (the "Questionnaire"). AR 446-51. Dr. Surapaneni did not identify the starting or ending date of her treating relationship with Plaintiff but reported that they had monthly 30-minute appointments. AR 446. She noted that he had "appetite disturbance with weight change" and "sleep disturbance." AR 447. The check-box Questionnaire asked her to rate Plaintiff's ability to do twenty-six "mental abilities and aptitudes needed to do" various kinds of work. AR 448-49. The abilities included such basic skills as carrying out "very short and simple instructions," making "simple" decisions, asking "simple" questions, maintaining socially appropriate behavior, using public transportation, and adhering to "basic standards of neatness and cleanliness." AR 448-49. As to all, she rated Plaintiff "seriously limited, but not precluded." Id. The Questionnaire defined that rating to mean, "ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances." AR 448.

Dr. Surapaneni found Plaintiff "moderately" limited in his activities of daily living and "markedly" limited in maintaining social functioning and concentration, persistence or pace. AR 450. Dr. Surapaneni opined that Plaintiff had suffered three episodes of decompensation within a twelve-month period, defined as an exacerbation of symptoms resulting in a loss of adaptive functioning. Id. While the form asked for the dates of the episodes of decompensation, Dr. Surapaneni

supplied none. Id. She predicted that Plaintiff would miss work due to his mental impairments more than four days each month. Id. She nevertheless opined that Plaintiff could manage his own benefits. AR 451.

C. **The ALJ's Evaluation of Dr. Surapaneni's Medical Evidence.**

The ALJ summarized Dr. Surapaneni's treating records. AR 26-27. The ALJ noted that while these records reflected gaps in treatment and running out of medication, they showed that his symptoms were stable with medication. Id. The ALJ concluded that Plaintiff's anxiety could be managed with appropriate treatment and he could work within the restrictions in the RFC analysis. AR 27.

The ALJ also considered the Questionnaire completed by Dr. Surapaneni and gave it "less weight" than her treating notes, finding that the treating notes "present a more accurate longitudinal picture of the claimant's functioning throughout the period of alleged disability." AR 27. As specific reasons for discounting the opinions in Dr. Surapaneni's Questionnaire, the ALJ found that the Questionnaire described functional limitations inconsistent with the treatment records. AR 27.

In comparing the Questionnaire to the treating records, the ALJ noted several inconsistencies. First, the ALJ cited Dr. Surapaneni's treating records noting that plaintiff was sleeping and eating well. AR 27, citing AR 94-95. These notes stand in contrast to Dr. Surapaneni's Questionnaire wherein she indicated that Plaintiff had "appetite disturbance with weight change" and "sleep disturbance." AR 447.

Second, the ALJ noted that the mental status examinations in the treating records do not "document signs of abnormal functioning, other than a depressed or anxious mood" and report that Plaintiff's "symptoms are stable with medication." AR 27. This finding is supported by substantial evidence per the summary of Dr. Surapaneni's treating records above. It is also, standing alone, sufficient reason to discount Dr. Surapaneni's Questionnaire opinions. In the Questionnaire, Dr.

7

Surapaneni opined that Plaintiff had "marked" functional limitations and suffered three episodes of decompensation during their one-year treating relationship. AR 450. Dr. Surapaneni's treating records were completely inconsistent with this opinion. "Episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). After meeting with Plaintiff, Dr. Surapaneni almost always assessed that he was "stable with symptoms on current dose of medications." Had he suffered even one, let alone three, episodes of decompensation during their treating relationship, her notes would have reflected it. That she supplied no dates for these supposed episodes supports the ALJ's rejection of her opinion.

The ALJ also noted that Plaintiff "informed Dr. Surapaneni that he was looking for a job [and] she did not note any reservations about [his] plans, nor did she caution him about absences from the workplace." AR 27, citing AR 398. The ALJ found this inconsistent with Dr. Surapaneni's Questionnaire opinion that Plaintiff would miss more than four days of work each month. AR 27, citing AR 450. While this last example of inconsistency is not clear and convincing (because it is difficult to predict what a doctor would write in progress notes in response to a patient's statements), the overall record supports the ALJ's finding of inconsistency and conclusion that Dr. Surapaneni's Questionnaire opinions about Plaintiff's functional limitations were far more extreme than the level of mental impairment reflected in her treating records.

The inconsistencies between the treating records and the opinion was a sufficient clear and convincing reason to reject Dr. Surapaneni's Questionnaire opinions. See Thomas, 278 at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and

inadequately supported by clinical findings.").

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: December 10, 2018

*Karen E. Scott*
KAREN E. SCOTT
United States Magistrate Judge